IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WILLIE JEFFERSON

                Plaintiff,

v.                                     Case No. 15-cv-650-wmc

L.C. WARD, ET EL,

                Defendants.

---

### DECLARATION OF RYAN WILLIS

---

I, Ryan Willis, hereby declare and state the following:

1. I am currently employed by the Federal Bureau of Prisons ("BOP") as the Supervisory Chaplain at FCI Oxford. I have been employed in this position since October 2011, and I have been employed by the BOP since April 2008.

2. The plaintiff, former inmate Willie Jefferson, alleges that as Supervisory Chaplain at FCI Oxford, I violated his right to practice his religion under the Religious Freedom Restoration Act (RFRA) by imposing an "informal, unwritten blanket ban" on prayer in the institution other than in the religious services area and living quarters. He claims that because the religious services area was often unavailable and his living quarters were too small for him to pray, I imposed a substantial burden on his ability to practice his religion.

3. As the Supervisory Chaplain at FCI Oxford, I am responsible for overseeing and addressing issues regarding inmates' practice of religion. The Religious Services Department accommodates the Islamic faith by providing them with Jumuah services on Fridays and Islamic study twice a week. We do not limit Muslim inmates' ability to pray five times a day. Muslim inmates may pray in the chapel or in their living quarters and, if they are working (or at school), the supervisor will designate a

safe, discreet area for them to pray. This is in accord with both the BOP's policy, Program Statement 5360.09, Religious Beliefs and Practices, and the Technical Reference Manual on Practical Guidelines for Administration of Inmate Beliefs and Practices. A copy of Program Statement 5360.09 is attached hereto as Exhibit 1. The Technical Reference Manual is not available to the public but it provides that prayers can be made in units and at work detail sites and schools during break times.

4. The camp chapel at FCI Oxford is open daily from 5:30 a.m. until 9:30 p.m., and all inmates at the camp may use the chapel during that time unless a particular faith group is holding their weekly service. Ordinarily, 10 hours per week are reserved for specific religious services in the chapel. The schedule for religious services and the availability of the chapel is posted in the inmate common area and on the electronic bulletin board. Therefore, except for when the chapel closes at 9:30 p.m. and when he would have been confined to his room between 10:00 p.m. and 5:30 a.m., Jefferson would have been able to use the chapel as long as another congregational service was not being performed.

5. As to the allegation his living quarters were not large enough to allow him to pray, while I do not know the exact measurement of the camp living quarters, the rooms are large enough that up to four inmate may reside in one room. Over the years, I have seen inmates doing everything from praying to doing burpees (exercises) in their living quarters with sufficient space.

6. In addition, in August 2015, Chaplain Mustafa Boz from FCI Milan visited the institution. Because of Jefferson's complaint about cell space, I asked Chaplain Boz, who is a Muslim Imam, if the cell was sufficient to accommodate daily prayers, and he indicated that it was large enough.

7. Concerning Jefferson's allegation the rated capacity and total capacity for FCI/FPC-Oxford were incorrectly calculated for purposes of BOP Program Statement 1060.11, Section 7.c(4)(b), I had no personal or direct involvement in making the calculations, and I have no knowledge of any miscalculations.

8. With respect to the American Correctional Association ("ACA") Standards for Adult Correctional Institutions 4th Edition Occupancy and Space Requirements for Adult Correctional Institutions, FCI/FPC-Oxford was last accredited on January 23, 2017. The accreditation is valid for three years.

9. Accordingly, I deny that it is or was our practice to prohibit prayer in the institution. While we do limit the areas in which inmates may pray for security reasons and to preserve the orderly running of the institution, we accommodate inmates' religious practices by providing them with suitable alternatives.

10. I specifically deny that I placed a substantial burden on Jefferson's ability to practice his religions.

I declare under penalty of perjury in accordance with the provisions of 18 U.S.C. § 1746 that the foregoing is true and correct.

_____
Ryan Willis
Supervisory Chaplain
FCI Oxford